UNITED STATES of America, Plaintiff,

v.

Edward UPTON, et al., Defendants.

No. CR–90–0629.

United States District Court, E.D. New York.

July 7, 1995.

Charles Gerber, Asst. U.S. Atty., for U.S.

Richard Ware Levitt, New York City, for Charles Catarelli.

Christine Yaris, New York City, for Edward Hay.

Harry Batchelder, New York City, for Charles Bray.

Kenneth Paul, Brooklyn, NY, for Hollis Huffman.

Richard Berne, Portland, ME, for K. Ray Stooksbury.

John M. Apicella, Brooklyn, NY, for Robert Zuegel.

Samuel Rosenthal, Curtis, Mallet–Prevost, Colt & Mosle, New York City, for Edward Upton.

Philip Katowitz, New York City, for Thomas Lewis.

Louis M. Freeman, Freeman, Nooter & Ginsberg, New York City, for Joseph Moser.

John D. Patten, New York City, for Stephen Jones.

Jerry D. Bernstein, New York City, for Roy Hardy.

Bernard H. Udell, Brooklyn, NY, for Robert Knox.

Jay Gregory Horlick, New York City, for Jacques Jean.

*MEMORANDUM AND ORDER*

GLASSER, District Judge:

The defendant Edward Upton moved this court for an order dismissing the indictment under the Speedy Trial Act, the Speedy Trial Plan Governing the Eastern District of New

York, the Fifth and Sixth Amendments to the United States Constitution and Fed. R.Crim.P. 48(b) and 16(b) and for reconsideration of this court's order dated May 1, 1995, denying the defendants' motion to dismiss upon the ground that they were denied their right to a speedy trial. The other defendants join in the motion for reconsideration. Oral argument was heard on June 16, 1995.

The motion to reconsider the court's order of May 1, 1995, familiarity with which is presumed, is granted so that some aspects of the Speedy Trial issue may be revisited and issues raised in Upton's motion which were not previously considered may be addressed.

### A. *Speedy Trial Violation*

Revisiting the Speedy Trial issues considered and decided in the Memorandum and Order of this court dated May 1, 1995, the court is driven to conclude that the defendants' motion to dismiss the indictment must be granted.

 In that Memorandum and Order the court questioned the viability of cases such as *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); *United States v. LoFranco*, 818 F.2d 276 (2d Cir.1987), and *United States v. Clymer*, 25 F.3d 824 (9th Cir.1994) in the light of *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) which held that except for 18 U.S.C. § 3161(h)(1)(F) every other provision in § 3161(h) provides for exclusion of "any period of delay." 476 U.S. at 326–27, 106 S.Ct. at 1875. Relying upon that holding and upon *United States v. Anderson*, 902 F.2d 1105 (2d Cir.), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 146 (1990) (provisions of the Speedy Trial Act embody a reasonableness standard for exclusion of time only when Congress explicitly required the period of delay to be reasonable), the court concluded that the exclusion it granted on the basis of complexity pursuant to § 3161(h)(8)(B)(ii) could be open-ended. The continued viability of *Beech–Nut*, *LoFranco* and *Clymer* was reaffirmed in *United States v. Gambino*, 59 F.3d 353 (2nd Cir.1995) in which the court once again declared that the length of a speedy trial exclusion based upon

complexity must be limited in time and reasonably related to the actual needs of the case. This court is obliged to obey the law as it is pronounced by the Court of Appeals for this circuit and in this regard, the prior determination sanctioning an open-ended excludable delay for complexity was erroneous. It follows, therefore, that the Speedy Trial Act was thus violated and the indictment must be dismissed pursuant to 18 U.S.C. § 3162(a)(2).

 Not considered in the Memorandum and Order of May 1, 1995 was the applicability of 18 U.S.C. § 3161(h)(1)(J) which excludes from Speedy Trial Act calculation "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." The defendants correctly contend that § 3161(h)(1)(J) was explicitly applicable to its July 29, 1994 motion to dismiss the indictment upon Speedy Trial grounds, which was heard on September 16, 1994 and was, therefore, as of that date, "actually under advisement by the court." The government made no response to that contention nor could they make one that is persuasive. That section would have permitted an excludable delay of thirty days from September 16, 1994. The motion was under advisement by the court considerably beyond that period and was thus in violation of its terms. That reading of § 3161(h)(1)(J) has been declared in *United States v. Bufalino*, 683 F.2d 639 (2d Cir.1982). In *United States v. Cobb*, 697 F.2d 38 (2d Cir.1982), citing *Bufalino*, the Court wrote, at page 43:

> Congress intended that the time between making the motion and finally submitting it to the court for decision be governed by (F), and that the time during which the court has the motion "actually under advisement" be governed by (J). (Citation omitted).

> (J)'s exclusion would ordinarily begin when the delay authorized by (F) ceased.... [U]p to 30 days may be automatically excluded under (J), and if more than 30 days are needed for proper decision on a difficult motion, an "ends of justice" continu-

ance under (h)(8) is available on proper findings.

*See also United States v. DiTommaso,* 817 F.2d 201, 209 (2d Cir.1987). No continuance beyond the thirty days was sought[1] nor could an "ends of justice" continuance be granted retroactively. *United States v. Tunnessen,* 763 F.2d 74 (2d Cir.1985) and *United States v. Stayton,* 791 F.2d 17 (2d Cir.1986). It must also be noted that delay caused by the pending speedy trial motion is not chargeable to the defendants for the reason that to do so would be to penalize them for asserting their speedy trial right. *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 375 (2d Cir.1979); *United States v. Didier,* 542 F.2d 1182, 1188 (2d Cir.1976). The Speedy Trial Act having been violated, the indictment must be dismissed pursuant to 18 U.S.C. § 3162(a)(2) which commands that "[i]f a defendant is not brought to trial within the time limit required ... the ... indictment *shall* be dismissed on motion of the defendant." (Emphasis added).

B. *Constitutional Considerations*

■ The court is also constrained to revisit its decision of May 1, 1995 insofar as it addresses the constitutional considerations. More specifically, reconsideration will be given to the third and fourth factors to be analyzed in determining whether a defendant has been deprived of his constitutional right to a speedy trial, namely, whether the defendant has asserted his right to a speedy trial and the prejudice to the defendant resulting from the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d

101 (1972). In the light of such reconsideration, the court is persuaded that it placed too much reliance upon the failure of the defendants to assert their rights and not sufficient emphasis upon the teaching of *Barker* that the waiver of a fundamental constitutional right based upon passive acceptance of delay is inconsistent with the pronouncements of that Court that a waiver of a constitutional right requires a finding that the right has been intentionally relinquished and that every reasonable presumption should be indulged against it. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937). The rule that the failure of the defendant to demand a trial gives rise to a finding of waiver (the demand-waiver rule) was rejected in *Barker.* That case teaches instead that the defendant is not obligated to bring himself to trial. The duty rests upon the state to bring prosecutions to a speedy conclusion. 407 U.S. at 528, 92 S.Ct. at 2191. In any event, it is clear that the defendants' motion to dismiss on speedy trial grounds put both the government and the court on notice that they would be held accountable for delay after that motion was made. *See United States v. Carini,* 562 F.2d 144, 150 (2d Cir.1977).

■ The fourth *Barker* factor, prejudice to the defendant, is implicated by the prolonged "anxiety and concern" defendants are reasonably expected to endure by virtue of a pending criminal indictment[2] and by the pos-

---

1. The government's awareness of the thirty day limitation of § 3161(h)(1)(J) is reflected in the transcript of the hearing on the speedy trial motion on September 16, 1994. In fairness to the government, that portion of the transcript is set out in full. (Tr. p. 22, lines 7–11):

 MR. POLKES: Your Honor, the only question I have is speedy trial and I appreciate the fact that these are complex motions and the question is whether or not the Court is going to need more than 30 days to decide.

 THE COURT: No, absolutely not.

 To the extent that the government was inadvertently misled by the court's response, the court accepts responsibility.

2. It may reasonably be argued that there is an apparent inconsistency between the "anxiety and concern" defendants are assumed to endure and

the proposition that a defendant is not obligated to bring himself to trial. The "anxiety and concern," it would be argued, is within the defendant's control to alleviate by insisting that he be brought speedily to trial. The reality, however, recognized by the legislators most intimately involved with the Speedy Trial Act, is that the last thing a defendant wants is a speedy trial. *See* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* (Fed.Judicial Center 1980). A review of even a random sampling of speedy trial cases would lead to the belief that there is merit to the view of the Speedy Trial Act held by experienced defense counsel, namely, "that it is obviously designed to permit defendants to take advantage of government errors." *See United States v. Gambino,* 818 F.Supp. 541 (E.D.N.Y.1993).

sible impairment of a defendant's ability to mount a defense which a prolonged delay may cause. As the Court in *Barker* has observed, the inability of a defendant adequately to prepare his case tilts the judicial playing field and the fairness of a resulting trial. The defendants here identify several persons who have died since they were indicted and whose testimony might or would have been important to the formulation of a defense. The government minimizes the significance of their demise, but an assessment of that significance is more appropriately made by the defense rather than by the prosecution. The defendants also properly assert that they have been prejudiced by the prolonged failure of the government to comply with its discovery obligations until the trial was virtually upon them. (*See* Affidavit of Samuel Rosenthal dated May 11, 1995 and Memorandum of Law in Support of Defendant Upton's Motion to Dismiss, 8–12.) The government bears the burden of establishing that the delay was justified and that there was no violation of the defendants' speedy trial rights. *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir.1979). That burden is not borne by the naked assertion that the defendants were not prejudiced and their rights not violated. In this and in other respects this case bears a striking similarity to *New Buffalo Amusement Corp.*, the reasoned decision in which is compelling and not distinguishable.

Just as undue emphasis was placed upon the defendants' acquiescence in the application of the *Barker* factors, so too was undue emphasis placed in the prior opinion upon the application of *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) to the facts of this case. The observations in *Doggett* which may not have been loudly enough trumpeted and have particular meaning here are that delay attributable to negligence

> still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, ... and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to a conviction, the harder it will try to get it.

505 U.S. at 657, 112 S.Ct. at 2693–94.

Having decided that the defendants' Speedy Trial and Sixth Amendment rights have been violated and that § 3162(a)(2) commands dismissal, it remains to decide whether the indictment should be dismissed with or without prejudice. 18 U.S.C. § 3162(a)(2) provides, in relevant part:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal, and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

In addition to the three factors explicitly mentioned "there is little doubt that Congress intended" prejudice to the defendant to be a relevant factor for the court to consider in making its determination. *United States v. Taylor*, 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). That determination, that is, whether to dismiss with or without prejudice is left to the discretion of the court with neither the one nor the other to be given preference. The discretion is not absolute and is reviewable for its abuse. Because Congress has explicitly provided the touchstones, among others, by which the court's discretion should be guided, those touchstones must be carefully considered and the role played by each in the decision-making process must be clearly articulated so that

the exercise of discretion can be meaningfully reviewed.

 Turning to those factors, the seriousness of the offense will be assumed. The second factor—the facts and circumstances which led to the dismissal have been adequately discussed above and need not be replicated.

The third factor—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, must, of necessity, also embrace the unexpressed factor of prejudice to the defendant. The prolonged delays in this case are the targets at which the Speedy Trial Act was clearly aimed and weighs heavily in the balance as does the adverse effect those prolonged delays must inevitably have upon the presentation of a meaningful defense.

In *United States v. Taylor, supra,* this thought was expressed as follows: "The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice of the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant in terms of his ability to prepare for trial...." 487 U.S. at 340, 108 S.Ct. at 2421. To fail to assign significant weight to this factor would seriously undermine the administration of the Speedy Trial Act. To the extent that the delay would also skew the fairness of a trial, it would seriously undermine the administration of justice.

For those reasons, which it is hoped are clearly enough articulated, the conclusion that the indictment must be dismissed with prejudice is compelling.

In view of the foregoing, the other grounds for relief raised by the defendants need not be addressed.

SO ORDERED.