UNITED STATES of America, Appellee,

v.

James TUNNESSEN, Douglas Fullerton,
and Michael Robert Reape,
Defendants-Appellants.

Nos. 1095, 1096, 1112, Dockets
84–1419, 1431, 1458.

United States Court of Appeals,
Second Circuit.

Argued April 23, 1985.

Decided May 24, 1985.

Mark B. Gombiner, New York City (Gombiner & Avenia, Peter J. Avenia, New York City, Robert H. Gombiner, of counsel, for defendant-appellant Michael Robert Reape.

Charles P. Gelso, Wilkes-Barre, Pa. (John P. Moses, Wilkes-Barre, Pa., of counsel), for defendant-appellant James Tunnessen.

Frank P. Geraci, Jr., (Asst. U.S. Atty., Rochester, N.Y., Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, and LUMBARD and NEWMAN, Circuit Judges.

FEINBERG, Chief Judge:

Section 3161(h)(8)(A) of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. (the Act),

permits a district court to toll the running of the speedy trial "clock" upon a determination that the "ends of justice" so require. Since such continuances, if too freely granted, would undermine the purposes of the Act, care must be taken to confine them to appropriate circumstances. In these appeals, we must decide whether the district court followed the proper procedures for granting an ends-of-justice continuance.

James Tunnessen and Michael Robert Reape appeal from judgments of conviction entered after a jury trial before Judge Michael A. Telesca in the United States District Court for the Western District of New York. Douglas Fullerton appeals from a judgment of conviction entered after his guilty plea before Judge Telesca, which was conditioned on the outcome of his Speedy Trial Act claim. Tunnessen, Reape and Fullerton all contend that the government failed to bring them to trial within the seventy-day period provided for by the Act, 18 U.S.C. § 3161(c)(1). Because we conclude that the proceedings in the district court did not comply with the Act, we reverse and remand.

### I.

Briefly, the facts giving rise to these appeals are as follows. In early December 1983, a federal grand jury returned a two-count indictment charging defendants-appellants and three others with possessing with intent to distribute approximately four pounds of a substance containing cocaine, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (Count One), and conspiring to distribute and possess with intent to distribute quantities of a substance containing cocaine, 21 U.S.C. § 846 (Count Two). Fullerton and Reape were arraigned on December 12, 1983, and Tunnessen was arraigned on December 20. Defendants filed pretrial motions in Janu-

ary 1984, which were deemed submitted on February 6. On the basis of these motions, the district court decided to hold a suppression hearing; this took place on May 29. Also on that date, all parties consented to an order excluding, for Speedy Trial Act purposes, 113 days from February 6 to May 29.[1] On July 6, 1984, the district court filed a seven-page Memorandum Decision and Order disposing of all outstanding pretrial motions. The court concluded: "In summary, all of the defendants' omnibus motions are denied and this case is scheduled for trial on September 25, 1984 at 10:00 A.M." All parties apparently agree that the judge correctly noted later that thirty-five days of nonexcludable time had passed as of July 6. Unless the July 6 order can properly be construed as an ends-of-justice continuance, the latest possible trial date consistent with the Act's seventy-day limit was August 10, 1984.

On September 25, after the trial date had been postponed until early October, Fullerton filed a motion to dismiss the indictment on the ground that the Speedy Trial Act had been violated. Reape and Tunnessen subsequently filed similar motions, the government responded, and oral argument was heard on October 10, 1984. In an opinion dated October 12, the district court denied the motions to dismiss, stating: "I hold that although not labeled as such, the court contemplated a continuance from July 6 until September 25 as is evidenced by the terms of its July 6 order." Citing section 3161(h)(8)(A), the court then set forth "[a] number of factors ... contemplated when the trial date of September 25 was established in the July 6 order," most of which concerned counsels' alleged need for additional preparation time. In particular, the court noted the complexity of the case, the substantial number of taped conversations involved,[2] a trial conflict of one

---

1. Even without the order, the time between February 6 and May 29 was excludable pursuant to 18 U.S.C. § 3161(h)(1)(F) (excluding from the speedy trial clock "delay resulting from any pretrial motion"). In the absence of a contrary claim by defendants, on this record we conclude that the time "was reasonably necessary for the

fair processing" of defendants' various motions. *United States v. Cobb*, 697 F.2d 38, 44 (2d Cir. 1982).

2. The government concedes that the district court's statement that "this indictment involves some three hundred (300) hours of tape-record-

of the defense attorneys and the fact that several defense attorneys were from out of town.

Trial was rescheduled for October 16, 1984, with Tunnessen and Reape the only remaining defendants. Fullerton had pled guilty to Count One of the indictment on October 4, expressly reserving his right to pursue his Speedy Trial Act claim; he was given a three-year suspended sentence. Tunnessen was convicted on Count Two and sentenced to six months imprisonment and four and one-half years probation. Reape was convicted on both counts and sentenced to a total of three years imprisonment. Tunnessen and Reape are currently serving their sentences.

Defendants advance two arguments on appeal. First, they contend that the procedural requirements of the Speedy Trial Act were violated by the district court's retroactive treatment of its July 6 order as an ends-of-justice continuance. Second, defendants argue that even if the district court's actions were procedurally correct, the reasons given are insufficient to justify the continuance that was granted. Because the district court's statement in October that its July 6 order was in fact an ends-of-justice continuance came too late to satisfy the procedural requirements of the Act, we need not address appellants' substantial challenge to the sufficiency of the reasons given.

## II.

The Speedy Trial Act commands the government to bring criminal defendants to trial within seventy days of their first appearance before a judicial officer of the court or the filing of an indictment, whichever is later. 18 U.S.C. § 3161(c)(1). If this deadline is not met, the district court must dismiss the indictment, either with or without prejudice. *Id.* § 3162(a)(2). Certain precisely defined periods of delay are automatically excluded from the calculation of the seventy-day time limit, such as those resulting from necessary pretrial proceedings or interlocutory appeals. *See id.* § 3161(h)(1)–(7). In order to "avoid the pitfalls of unnecessary rigidity" and provide courts with the discretion to deal effectively with individual cases, see S.Rep. No. 1021, 93rd Cong., 2d Sess. 21 (1974) (Senate Report), Congress included section 3161(h)(8)(A), which permits a district court on its own motion to grant continuances comprising excludable time when it finds that "the ends of justice ... outweigh the best interest of the public and the defendant in a speedy trial."[3] But despite its interest in insuring flexibility, Congress intended that this exclusion be "rarely used," Senate Report, *supra*, at 41, and sought to avoid its abuse by providing that no period of delay based on the "ends of justice" may be excluded "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice [would be] served" by granting the excludable delay. Subsection (h)(8)(B) contains a nonexclusive list of factors for the court to consider in deciding

ed conversations" was incorrect. Although the case involved some 300 taped conversations, they comprised a total of approximately 70 hours.

3. Section 3161(h)(8)(A) provides:
(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
....
(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

whether to grant a continuance under subsection (h)(8)(A).[4]

■ At least two purposes are served by the requirement that a district court set forth its reasons for granting an ends-of-justice continuance. First, it insures careful consideration of the relevant factors by the trial court. Senate Report, *supra*, at 39. Second, the requirement provides the appellate court with an adequate record on which to review the district court's decision. *United States v. Brooks*, 697 F.2d 517, 520 (3d Cir.1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).

■ In this case, the district judge set defendants' trial date outside the limits of the Act without making any ends-of-justice findings on the record. Only after defendants brought their motions to dismiss did he record his findings as required by section 3161(h)(8)(A). The Act plainly contemplates that the district "judge must determine *before granting the continuance* that society's interest in meeting the 'ends of justice' outweighs the interest of the defendant and of society in achieving speedy trial." Senate Report, *supra*, at 39 (emphasis added). *See also United States v. Carey*, 746 F.2d 228, 230 (4th Cir.1984) ("retroactive continuances that are made after expiration of [speedy trial clock] for reasons the judge did not consider before

lapse of the allowable time are inconsistent with the Act"); *United States v. Frey*, 735 F.2d 350, 353 (9th Cir.1984) ("district court erred by making *nunc pro tunc* findings to accommodate its unwitting violation of the Act"); *United States v. Richmond*, 735 F.2d 208, 215–16 (6th Cir.1984) (judgment of conviction reversed because "district court cannot fairly be said to have granted the continuance ... based on the findings that it set forth" later); *United States v. Brooks, supra*, 697 F.2d at 522 ("district judge must consider the matter at the outset"). Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period. Nevertheless, it is reasonably well settled that the required findings need not be placed on the record at the same time that the continuance is granted. *See United States v. Brooks, supra*, 697 F.2d at 522 (citing cases).

■ Given these principles, our question is whether the district court's October 12 statement—that on July 6 it had in fact made an ends-of-justice determination in setting the trial date—satisfies the procedural requirements of the Act. The government devotes surprisingly little attention to this question in its brief. It apparently contends that as long as the

---

**4.** Section 3161(h)(8)(B) provides:

The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or

because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

In addition, the Act bars the district court from taking certain factors into account:

No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.

18 U.S.C. § 3161(h)(8)(C).

district court eventually makes the required findings, the timing of the court's announcement that a particular continuance was based on the ends of justice is largely immaterial. We disagree. The Seventh Circuit's dictum in *United States v. Janik*, 723 F.2d 537, 544–45 (7th Cir. 1983), is persuasive:

> And while the required findings need not be entered at the same time as the grant of the continuance, see *United States v. Brooks*, 697 F.2d 517, 522 (3d Cir.1982), and cases cited there, here no findings were made until the judge denied Janik's motion to dismiss the case for violation of the Speedy Trial Act. That may well be too late. If the judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act.

While we do not suggest that it occurred here, the procedure followed in this case does contain the risk that a district judge in a particular case may simply rationalize his action long after the fact, in order to cure an unwitting violation of the Act. Moreover, had the district judge in this case stated at the time he initially set the trial date, before the speedy trial clock had run, that he was granting an ends-of-justice continuance, the parties would have been on notice and the whole Speedy Trial Act problem might have been avoided. As appellants point out, the Act itself requires consultation with counsel before setting the trial date. 18 U.S.C. § 3161(a). If defense counsel had been prepared to go to trial in late July, as they now claim, they could have informed the judge that he was mistaken in concluding that they needed more time. If instead they had in fact needed the additional time to prepare adequately, in light of the unusual or complex nature

of the case, it is similarly unlikely that any problem would have arisen. *See* 18 U.S.C. § 3161(h)(8)(B)(ii). As matters stand, however, during the more than three-month gap between the initial setting of the trial date and the recording of findings neither side had reason to know that an ends-of-justice continuance had been granted. The July 6 Memorandum Decision and Order makes no reference to a continuance based on the ends of justice. Nor had any party requested that such a continuance be granted at that time. *Cf. United States v. Rush*, 738 F.2d 497, 507 (1st Cir.1984); *United States v. Mitchell*, 723 F.2d 1040, 1042–44 (1st Cir.1980). And the May 29 order of excludable time, highlighted by the government at oral argument, concerns only time already spent in preparation; it does not refer to the need for additional time beyond May 29. Defense counsel's consequent inability to respond until after the fact to the district court's assertion that they needed more time renders problematic the task of evaluating the court's ends-of-justice findings.

■ Accordingly, we conclude that time may not be excluded based on the ends-of-justice unless the district court indicates at the time it grants the continuance that it is doing so upon a balancing of the factors specified by section 3161(h)(8).[5] We also adopt the position taken in other circuits that the precise reasons for the decision need not be entered on the record at the time the continuance is granted. *See United States v. Brooks, supra*, 697 F.2d at 522 (citing cases). A prospective statement that time will be excluded based on the ends of justice serves to assure the reviewing court that the required balancing was done at the outset. Moreover, it puts defense counsel on notice that the speedy trial clock has been stopped. If for any reason counsel believes that this is inappropriate, an objection may be raised and a record made at that time. In any event, a later recording of the precise findings re-

---

5. We note that we deal here only with situations where the judge takes action, but neglects to say prospectively that he is making an "ends of justice" continuance. We express no view on

whether such a continuance may be granted retroactively when the judge has not taken action and the delay has been caused by the death or disability of the judge.

quired by the Act will in most cases provide the reviewing court with an adequate record for review. We emphasize, of course, that where possible "a court generally should make the findings required by section 3161(h)(8)(A) at the time it grants the continuance." *United States v. Clifford,* 664 F.2d 1090, 1095 (8th Cir.1981).

Recent cases in which courts of appeals have approved ends-of-justice continuances granted without contemporaneous findings are not to the contrary. The Third Circuit's decision in *United States v. Brooks, supra,* for example, approved precisely the sort of procedure that we require here. See 697 F.2d at 521–22. In *Brooks,* the district court indicated at the time it granted the continuance that it was doing so based on the ends-of-justice; it checked two boxes on a form that quoted from the ends-of-justice considerations listed in section 3161(h)(8)(B). Four months later, in response to defendants' motion to dismiss, the court set forth in detail its reasons for granting the continuance. The Third Circuit concluded that the contemporaneous statement of reliance on the ends-of-justice and the later detailed findings, taken together, were "sufficient to satisfy the 'reasons' requirement of the Speedy Trial Act." *Id.* at 522. *See also United States v. Rush, supra,* 738 F.2d at 507; *United States v. Bryant,* 726 F.2d 510, 511 (9th Cir.1984); *United States v. Mitchell, supra,* 723 F.2d at 1042–44.

■ The government acknowledges that defendants had no obligation to take affirmative steps to insure that they would be tried in a timely manner, *United States v. Bufalino,* 683 F.2d 639, 646 (2d Cir. 1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). Its brief nonetheless contends that "the defense [should not] be allowed to indicate to the Government and the court that additional time is needed for preparation and, after such time is given, be allowed to claim his rights have been violated under the Speedy Trial Act." To the extent that this statement represents a charge concerning the defense tactics in this case, rather than merely a general proposition, it was effectively withdrawn at oral argument. In any event, the record contains no evidence indicating that defendants employed tactics calculated to "ensnare" the district court into allowing the seventy-day clock to run. See *id.* at 646. Accordingly, the indictment must be dismissed.

■ Section 3162(a)(2) provides that in deciding whether the indictment should be dismissed with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this [Act] and on the administration of justice." Though that decision is normally for the district judge in the first instance, see *United States v. Janik, supra,* 723 F.2d at 546, a remand for a hearing should not be routinely ordered in a case like this where the issue of whether dismissal should be with or without prejudice arises for the first time on appeal, the trial court having denied the motion to dismiss. The exercise of the informed discretion of the district judge is often helpful, but there is no need for a hearing in this case because we conclude that a decision to dismiss with prejudice would be an abuse of discretion. *Cf. United States v. Caparella,* 716 F.2d 976 (2d Cir.1983) (reversing decision to dismiss without prejudice). Even if seriousness of the crime is discounted, but see *United States v. Russo,* 741 F.2d 1264, 1267 (D.C.Cir.1984) (narcotics offense "serious" for purposes of Speedy Trial Act dismissal), the other three relevant factors listed in section 3162(a)(2) —the facts and circumstances of the case that led to dismissal, impact of a reprosecution on the administration of the Act, and impact of a reprosecution on the administration of justice—combine to require a ruling in favor of dismissal without prejudice.

Dismissal is ordered here without any determination that the elapsed time could not have been found to be within the allowable limits of the Speedy Trial Act. The error that occurred is non-compliance with a procedural requirement clarified for this circuit by today's decision. The only rea-

sonable disposition under these circumstances is dismissal without prejudice. We would not serve the purposes of the Speedy Trial Act by precipitating a needless hearing with the risk of a further appeal if by chance the district court should dismiss with prejudice.

For the foregoing reasons, the judgments of conviction entered against appellants are reversed and the cases remanded to the district court with instructions to dismiss the indictment without prejudice.