**UNITED STATES of America,**

v.

**Jose CORREA, Defendant.**

**No. 99 Cr. 180(GEL).**

United States District Court,
S.D. New York.

Sept. 25, 2001.

*OPINION AND ORDER*

LYNCH, District Judge.

It is well established that under the Speedy Trial Act, a judge may not ordinarily exclude time in the interests of justice retrospectively. Compelling circumstances, however, may create an exception to that sound rule.

*Background*

Defendant Jose Correa was arrested on December 21, 1998, on narcotics conspiracy charges, and released on bail. On or about February 22, 1999, a felony indictment was filed, charging him with narcotics conspiracy and possession with intent to distribute, in violation of 21 U.S.C. §§ 821(b)(1)(B) and 846. Correa failed to appear for his scheduled arraignment on these charges on March 4, 1999, and a warrant was issued for his arrest.

Correa was located on or about August 20, 2001, at Columbia Presbyterian Hospital, where he had been admitted for treatment following a motorcycle accident, and rearrested. He was released from the hospital on August 24, presented before United States Magistrate Judge Henry Pitman, and detained. Judge Pitman scheduled an initial pretrial conference for September 11, 2001, and entered an order

excluding the time between those dates under the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(A).

■ That conference never took place. On the morning of September 11, as all the world knows, terrorists attacked and destroyed the World Trade Center, less than half a mile from the United States Courthouse. The Courthouse was evacuated, and the Metropolitan Correctional Center ("MCC"), where Correa was detained, locked down for security reasons.

The resulting devastation need not be detailed by the Court. All of Manhattan south of 14th Street, including the area comprising the Courthouse, the United States Attorney's Office, and the MCC, was closed to all non-emergency personnel for nearly a week. Although the Courthouse reopened on September 18, all telephone service, including of course fax and internet access, at both the Courthouse and the United States Attorney's Office remains disrupted. No jury venires have been available from September 11 to the present, and it is unclear when juries will again be able to be empaneled. Local and federal law enforcement agents, specifically including those assigned to the instant case, have been massively redeployed to emergency service work and the pressing needs of the investigation of the terrorist attack. Security concerns and staffing difficulties at the MCC, which has also suffered dislocation of critical electronic and communications systems, make it virtually impossible, and clearly imprudent, to transport prisoners to Court. Members of the Court's bar too numerous to count, from the largest law firms to individual practitioners, lost their access to their offices or have been and remain unable to communicate effectively with the Court and with government counsel. An unknown number have had their offices destroyed completely, or have lost their very lives.

Based on these extraordinary events, and in the absence even of sufficient communications, government personnel, and defense counsel to make individualized determinations of how much time would be needed to return to normal functioning on September 17, 2001, Chief Judge Michael B. Mukasey, on the application of the United States Attorney, entered a global order granting a prospective 30–day exclusion of time in all pending criminal cases in the Southern District of New York. In addition, prosecutors in charge of individual cases have been seeking continuances specifically tailored to the needs of their particular cases.

In the instant case, the government seeks a specific continuance from today through October 1, 2001, when it is hoped that counsel, the Court and the defendant will be able to meet for the conference that had been scheduled for September 11.

But what of the period from September 11 through September 17? The government did not seek exclusion of this period, and Chief Judge Mukasey's order appears not to exclude it, almost certainly out of a cautious concern that it might violate the Act to enter an order excluding time retroactively. On careful reflection, it appears that this entirely appropriate conservative approach is unnecessary, and that the Court has, and in these extraordinary circumstances should exercise, authority to make a retroactive exclusion of time in the interests of justice.

### Discussion

After setting specific time limits within which certain actions must be taken in criminal cases, the Speedy Trial Act provides that certain periods of delay should be excluded in calculating those limits. 18 U.S.C. § 3161(h). One of those exclusions covers "[a]ny period of delay resulting from a continuance granted by any judge

... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(8)(A). The statute requires that such an exclusion will only apply if "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." The court is granted wide discretion in considering whether the interests of justice require a continuance. Although the statute identifies certain factors to be considered in the determination, it is clear from the face of the Act that these factors are (but for certain prohibited factors not relevant here, *see* § 3161(h)(8)(C)) non-exclusive.

 Nothing in the statute itself expressly addresses or prohibits the question of *nunc pro tunc* exclusions under § 3161(h)(8)(A). It is clear, however, that the statute contemplates that in the ordinary case the court will grant a continuance and make its findings on the record at the time the continuance is granted, and the purposes of the statute are surely furthered by such a requirement. In *United States v. Tunnessen,* 763 F.2d 74 (2d Cir. 1985), the Court of Appeals addressed this problem, and concluded "that time may not be excluded based on the ends-of-justice unless the district court indicates at the time it grants the continuance that it is

doing so upon a balancing of the factors specified by section 3161(h)(8)." *Id.* at 78. This rule has since been reaffirmed by the Court on at least two occasions. *United States v. Kelly,* 45 F.3d 45 (2d Cir.1995), *United States v. Breen,* 243 F.3d 591 (2d Cir.2001). Other circuits have agreed. *See, e.g., United States v. Doran,* 882 F.2d 1511 (10th Cir.1989), *United States v. Frey,* 735 F.2d 350 (9th Cir.1984), *United States v. Janik,* 723 F.2d 537 (7th Cir. 1983).

The circumstances facing this Court today, however, are far different from those addressed in the Second Circuit case law. In *Tunnessen,* the district court had set a trial date more than a month later than the last date permitted by the Act, without alluding to the Act in any way or expressly stating any reasons why that date might be appropriate, and then entered still another postponement. Only after the defendant had moved to dismiss the indictment for violation of the Speedy Trial Act, and more than two months beyond the required period, did the district court enter an order retrospectively noting a variety of factors that it had considered in setting the trial date, and ruled that it had silently made an interest-of-justice determination at that point. 763 F.2d at 75–77. The same factual scenario was present in *Kelly.* There too the district court made a *nunc pro tunc* finding that the interests of justice had justified an exclusion that had not expressly been made at the time, only after the clock had run and the defendant had moved to dismiss on speedy trial grounds. 45 F.3d at 46–47.[1]

---

1. In *Breen,* the Court recently reaffirmed the continuing vitality of *Tunnessen.* Once again, the Court confronted a case in which it was contended that an interests-of-justice finding had been made for the first time after the clock had run and the defendant had moved for dismissal. The Court made clear that if that had in fact occurred, *Tunnessen* would require reversal; however, the Court found that the Court had in fact made a contemporaneous decision to exclude time after a prop-

er balancing of factors, and had merely failed to use the specific language of § 3161(h)(8). 243 F.3d at 594–97. It has been clear since *Tunnessen* that the precise reasons for granting the exclusion need not be set forth at the time the exclusion is made, so long as it is clear that the Court engaged in the proper consideration of the Act's purposes and consciously determined to exclude time. *Tunnessen,* 763 F.2d at 78, citing *United States v. Brooks,* 697 F.2d 517, 522 (3d Cir.1982). But

Under those circumstances, there is no question that the Court of Appeals correctly prohibited retrospective exclusions. As the Court noted, allowing such exclusions would create "the risk that a district judge in a particular case may simply rationalize his action long after the fact, in order to cure an unwitting violation of the Act." *Tunnessen,* 763 F.2d at 78. Moreover, by making interests-of-justice exclusions as the case goes along, district courts will keep counsel apprised of the state of the speedy trial clock, and permit counsel to register objections or make their views known. *Id. See also Janik,* 723 F.2d at 544–45 ("If the judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act.")

No such dangers are present here. With respect to the factors addressed in *Tunnessen,* the granting today of an exclusion of time from September 11 is essentially "contemporaneous." This Court has no idea when this case, which has just been assigned to the writer of this opinion and is essentially at its earliest stages, will go to trial, or whether it will go to trial at all.[2] Although the indictment was filed in 1999, very little time has run on the speedy trial clock, since defendant was unavailable either by reason of his failure to appear or his hospitalization. 18 U.S.C. § 3161(h)(3). There is thus no incentive to

rationalize any possible violation of the Act. And by entering the instant order at the present time, counsel will be put on notice of the Court's calculation of the speedy trial clock, and will have ample opportunity to object or to raise any issue they might choose to raise about the proper timetable for bringing the case to trial.

Finally, there is simply no question that the exclusion of time from September 11 to the present is justified in the interests of justice. The administration of justice in this District ground to a temporary halt as a result of acts of warfare against the United States that created a public emergency. The larger interests of justice in the District—not to mention supervening necessity—surely required suspending proceedings in this case. Although the drafters of the Speedy Trial Act did not provide a particular exclusion of time for such public emergencies (no doubt failing to contemplate, in the more innocent days of 1974, that emergencies such as this would ever occur), the discretionary interests-of-justice exclusion is surely sufficiently capacious to cover the situation. Indeed, there is authority for granting such an exclusion in the case of a public emergency caused by a natural catastrophe. In *Furlow v. United States,* 644 F.2d 764 (9th Cir.1981), the Court approved an exclusion pursuant to § 3161(h)(8)(A) due to an emergency occasioned in the Eastern District of Washington by the eruption of the Mt. St. Helens volcano. While it is unclear when the district court ordered the exclusion of time in that case, a close reading suggests that it too was retrospective.[3]

this aspect of the rule has no application here, since this Court clearly had no opportunity to, and did not, make any determination about the Speedy Trial Act's application to this case on September 11.

**2.** In applying for the order of exclusion, the government notes that it has engaged with defense counsel in preliminary discussions regarding a possible disposition, and that de-

fense counsel has consented to the proposed exclusion in part to have the opportunity to return to such negotiations.

**3.** Trial had been scheduled for May 20, 1980, but "was prevented by the eruption of May 18, 1980, which obviously interrupted transportation, communication, etc." 644 F.2d at 767. Only "after rescheduling the trial" did

Indeed, in a little-noted footnote, the *Tunnessen* Court carefully and presciently limited its holding. Surely without contemplating the precise circumstances facing this Court today, the Court noted that not every case of a *nunc pro tunc* exclusion of time presented the dangers that led the Court to reach its conclusion, and reserved for future decision a question very similar to that addressed here:

> We note that we deal here only with situations where the judge takes action, but neglects to say prospectively that he is making an "ends of justice" continuance. We express no view on whether such a continuance may be granted retroactively when the judge has not taken action and the delay has been caused by the death or disability of the judge.

763 F.2d at 78 n. 5.

In view of this reservation, it is clear that the Second Circuit has never held that a retroactive exclusion is impermissible when the delay in making findings results from the disability not merely of a single judge, but of an entire Court. This Court has no doubt whatsoever how that reserved question would be answered by the Second Circuit or the Supreme Court should the issue ever be presented to it.

### Conclusion

Accordingly, for the reasons stated above, this Court concludes that the situation facing this Court and this City from September 11 to the present, and continuing into the foreseeable future, justifies a finding that the interests of justice in granting a continuance and the exclusion from speedy trial consideration of a period of time between September 11 and October 1, 2001, outweigh the interests of the public and the defendant in a speedy trial. It is therefore hereby ORDERED that

the Court find the period from June 2 (the expiration of the speedy trial period) through June 17 excludable due to the emergency. *Id.*

1. On the application of the United States of America and with the consent of counsel for defendant Jose Correa, time from the date of this order through October 1, 2001, is excluded in calculating a speedy trial date under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(8)(A), in the interests of justice.

2. On the Court's own motion, for the same reasons and pursuant to the same authority, the time from September 11 through the date of this order is also excluded.

SO ORDERED.

at 768. It is difficult to see how this decision could have been made prospectively, given the timing reported by the Ninth Circuit.